## LAMB et al. v. BONDS & DILLARD DRILLING CORPORATION et al.

### No. 3216.

Court of Civil Appeals of Texas. El Paso.

Nov. 7, 1935.

J. S. Callicutt and Davis, Jester & George, all of Corsicana, Fred Upchurch,

of Austin, and Lacy & Price, of Longview, for plaintiffs in error.

W. H. Sanford, W. H. Francis, and Walace Hawkins, all of Dallas, and Phillips, Trammell, Chizum, Estes & Edwards, of Fort Worth, for defendants in error.

HIGGINS, Justice.

This suit was brought by Bonds & Dillard Drilling Corporation and Magnolia Petroleum Company against E. A. Lamb and J. Robert Bozeman.

For convenience an outline of the controversy as shown by the pleadings will be given. The plaintiffs alleged:

That Bonds & Dillard Drilling Corporation owns and holds an oil and gas lease on the south 40 acres of a certain 58.25 acres of land, more or less, out of the southwest corner of the south ½ of the Carl Rhode survey in Gregg county, Tex., describing such 58.25-acre tract by metes and bounds.

That Magnolia Petroleum Company is the owner of the following described oil and gas lease, to wit:

"A part of the G. R. Rains headright, Gregg County, Texas;

"Beginning at the Northwest corner of said Rains Headright bearing tree N 63' E 5 varas;

"Thence South 1310⅕ varas to S.W. corner of Rains Survey and S.E. Corner of Tindale Survey;

"Thence East 600⅓ varas to Mrs. M. O. Shepperd's S.W. corner, two gums;

"Thence North 1310⅕ varas to Mrs. M. O. Shepperd's N.W. corner, sweetgum S. 65' E. 2 varas;

"Thence West 633⅓ vrs. to place of beginning, containing 147 acres, more or less."

Plaintiffs are in possession of said tracts of land and engaged in producing, saving, and marketing oil and gas therefrom. Claiming under a warranty deed from Bozeman dated April 12, 1933, Lamb is asserting title to the oil, gas, and minerals under the following described land:

"A part of the Geo. R. Rains Survey, Gregg County, Texas;

"Beginning at a point on the WBL of Geo. R. Rains Survey 1310⅕ vrs. N. of S.W. corner of Geo. R. Rains Survey, the S.E. corner of the Tindale Survey, bearing tree N 63 E. 5 vrs;

"Thence E along an old fence row to N W corner of a 100 acre tract deeded by Mrs. M. O. Sheppard to her son O. G. Sheppard, now owned by I. Isley and located 418 vrs. W. of the N E corner of the Isley 100 acre tract, same being Mrs. Eva Patterson's SW corner and located 316⅓ vrs W of a sweet gum stump and an iron bolt;

"Thence N with W.B.L. of Mrs. Eva Patterson's land 45 vrs. to S.B.L. of Carl Rhodes Survey;

"Thence W along S.B.L. of Carl Rhodes Survey to the NW corner of Carl Rhodes Survey;

"Thence S to place of beginning."

Lamb is preparing and threatening to enter upon the land last described and drill a well thereon.

Plaintiffs prayed for temporary injunction to be perpetuated upon final trial and judgment quieting title in them respectively and cancellation of the deed from Bozeman to Lamb as a cloud upon their title.

Temporary injunction issued. Thereafter on September 7, 1933, defendants answered by general demurrer, general denial, plea of not guilty and special plea asking for the appointment of a receiver for the land in controversy for the development of the oil and gas resources.

The Shasta Oil Company and Empire Gas & Fuel Company intervened setting up that they had an oil and gas lease covering 23½ acres out of the Carl Rhode survey describing said land by metes and bounds; that the east 284 acres of the land described in the deed from Bozeman to Lamb is a part of the 23½ acres.

Said interveners sought the same relief as the plaintiffs.

The cause came on for trial on February 5, 1934, and all parties announced ready for trial.

On February 6, 1934, defendant filed another answer to the suit of the plaintiffs and said interveners.

On February 9, 1934, Loyce Phillips was granted leave to intervene and upon said date filed his plea setting up that he was the fee owner of the above-mentioned south 40 acres of the 58.25 acres in the Rhode survey under lease to the Bonds & Dillard Drilling Corporation. He prayed that his title be quieted and the deed from Bozeman to Lamb be canceled as a cloud upon his title.

February 12, 1934, an instructed verdict was returned in favor of plaintiffs and interveners and judgment rendered as sought by them.

The Carl Rhode survey, No. 177, is a parallelogram. The Geo. A. Thomason survey, No. 175, is also. The Thomason lies east of and adjacent to the Rhode. A straight line running east and west is the south boundary line of the two surveys. The Geo. R. Rains survey, No. 350, is south of and adjacent to the Rhode and Thomason surveys.

The field notes of the Rains surveys, as given in the patent, are:

"Beginning at the SW corner of No. 177 from which an elm bears S 57½ E 24 vrs; Thence S 1357 vrs. * * *

"Thence N. 1900 vrs the S.E. corner of No. 175, from which a black oak bears N. 37 E. 2 vrs;

"Thence W. with the line of No. 175 1900⁹⁄₁₀ vrs. S.E. corner 177 at 2850 the place of beginning."

It is uncontroverted that the north line of the Rains is the same as the south line of the Rhode; that the southwest corner of the Rhode is the same as the northwest corner of the Rains. The Rhode is the senior of the three surveys.

Before 1890, B. M. Bozeman acquired the south half of the Rhode survey and all of the Rains. He died and his heirs, by suit, partitioned his lands among them. The south half of the Carl Rhode survey was partitioned as follows:

"To John H. Bozeman, '53⅓ acres out of the south half of the Carl Rhode headright survey, said 53⅓ acres being off of the east side of said half of said survey, having a north and south line of 316⅔ varas and an east and west line of 950 varas.'

"To Mrs. Fallie B. Bozeman, '53⅓ acres out of the Carl Rhode headright survey, said 53⅓ acres out of the west side of the south half of said survey and has a north and south line of 316⅔ vrs and an east and west line of 950 varas.'

"To Mrs. Mollie C. York, '53⅓ acres out of the south half of the Carl Rhode headright survey in Gregg County, Texas, which said 53⅓ acres has a north and south line of 316⅔ varas and an east and west line of 950 varas and is bounded on the west by Mrs. Fallie B. Bozeman's 53⅓ acres and on the east by the 53⅓ acres herein allotted to John H. Bozeman.'"

The George R. Rains survey was partitioned as follows:

"To Mrs. Mildren O. Sheppard, '580 acres off of the east end of the George R. Rains headright survey, which said land is described as follows: Beginning at the S.E. corner of the G. A. Thomason survey (No. 175); Thence West 2246 varas to a stake on the south line of the Carl Rhode headright survey; Thence south 1357⁷⁄₁₀ varas to the south line of the Rains Survey; Thence East with said south line 296 varas to a stake from which a sweet gum bears S. 64 W. 5.4 varas, an Elm 37½ West 2.2 varas; Thence south 543.1 varas to a stake from which an Elm 70 E. 8.2 varas and a willow oak bears N. 63 E. 4.8 varas; Thence East 950 varas a stake from which a willow oak 14 inches in diameter bears N. 55 E. 5.4 varas, the same being the S.E. corner of the said Rains survey; Thence north 1900.8 varas to the place of beginning."

"And to Robert J. (J. Robert) Bozeman, '147 acres off of the west end of the George R. Rains survey, said land being described as follows: Beginning at the SW. corner of the Carl Rhodes Survey; thence south 1357.1 varas to the SW. corner of the said Rains survey; Thence east .604 varas to the SW corner of the land as above partitioned to Mrs. Mildren O. Sheppard; Thence north with Mrs. Sheppard's west line 1357.1 varas to the south boundary line of Carl Rhode survey, the same being the said Mrs. Mildren O. Sheppard's N.W. corner; Thence west 604 varas to the place of beginning;"

No survey was made by the commissioners in connection with this partition. The measurements given in the partition judgment were evidently taken from the calls for distance as stated in the original patents.

It will be noted that the 147-acre tract partitioned to J. Robert Bozeman off of the west end of the George R. Rains survey had as its northwest corner, "the SW corner of the Carl Rhode Survey" and as its northeast corner a point on "the south boundary line of the Carl Rhode survey, the same being the said Mrs. Mildren O. Sheppard's NW. corner."

The Mollie C. York and Fallie Bozeman tracts in the Carl Rhode survey, being the west ⅓ and the middle ⅓, respectively, of the south half of said survey, passed by regular chain of conveyances to the lessors who executed the oil and gas

leases owned by plaintiff, Bonds & Dillard Drilling Corporation, and interveners, Loyce Phillips, Shasta Oil Company and Empire Gas & Fuel Company, and it is not disputed that said plaintiff and interveners own valid and subsisting oil and gas leasehold estates bounded on the south by the south line of the Carl Rhode survey.

J. Robert Bozeman sold his 147 acres off the west end of the George R. Rains survey to Mrs. E. L. Walker by deed describing it as follows:

"Beginning at the NWC of the said Rains. headright bearing trees N. 63 E. 5 vrs;

"Thence South 1310⅙ vrs. to SWC. of Rains survey and SE. corner of Tindale;

"Thence East 600⅓ vrs. to Mrs. M. O. Sheppard's SWC., two gums;

"Thence North 1310⅙ vrs. to Mrs. M. O. Shepperd's NWC. sweet gum S. 65 E. 2 varas;

"Thence West 633⅓ vrs. to place of beginning, containing 147 acres, more or less."

This 147-acre tract was conveyed by Mrs. Walker to A. M. Connally; by Connally to J. H. Beavers, each of said conveyances having the same description as that contained in the deed from J. R. Bozeman to Mrs. Walker.

J. H. Beavers conveyed the west half of said tract to O. E. Goolsby and the east half to Miss V. L. Goolsby.

O. E. Goolsby and Miss V. L. Goolsby; respectively, made oil and gas leases on their respective tracts to W. Grant Blanchard, Jr., which oil and gas leases were by mesne assignments vested in and are now owned by plaintiff Magnolia Petroleum Company; and it is not disputed that plaintiff, Magnolia Petroleum Company, owns a valid and subsisting oil and gas leasehold estate covering the 147-acre tract of land conveyed by J. Robert Bozeman to Mrs. Walker.

On April 13, 1933, J. Robert Bozeman executed a warranty deed to E. A. Lamb describing a tract of land purporting to be conveyed thereby as follows:

"Beginning at a point on the west boundary line of the George Rains survey 1310⅙ vrs. north of the SW. corner of the George Rains survey and the SE. corner of the Tindale survey, a bearing tree N. 63 E. 5 vrs;

"Thence East along an old fence row to the NW. cor. of a 100 acre tract deeded by Mrs. M. O. Sheppard to her son, A. F. Sheppard, now owned by I. Isley, and located 418 vrs. west of the NE. corner of the I. Isley 100 acre tract, same being Mrs. Eva Patterson's S.W. corner and located 316⅓ vrs. west of a sweet gum stump, an iron bolt;"

"Thence North with the WBL. of Mrs. Eva Patterson's land 45 vrs. to the SBL. of the Carl Rhode H.R. Survey;

"Thence West along the SBL of the Carl Rhode survey to the SW. cor. of the Carl Rhode survey;

"Thence South to the beginning place."

A lane and fence rows extend. in a substantially east and west direction along or in the vicinity of the common line between the Rhode and Rains surveys. The defendant Lamb, by virtue of the aforesaid deed to him from J. Robert Bozeman, claims to own a strip of land lying immediately north of and adjacent to said lane, some 70 varas wide at its west end.

### Opinion.

The issue in the case is one of boundary. It is the theory of plaintiffs in error that the south line of the Rhode survey is some distance north of the lane and fence but the north line of the 147 acres sold by Bozeman to Mrs. Walker is the lane-fence line. If this theory be sound title to the strip of land in controversy remained in Bozeman.

To sustain this theory it is necessary to reject as mistaken the corner calls in the Bozeman-Walker deed "beginning at the NWC of the said Rains headright" and "thence north 1310⅙ vrs. to Mrs. M. O. Shepperd's NWC."

It makes no difference to defendants where the south line of the Rhode survey may be located on the ground, for if these calls mean what they say, then title to the disputed strip passed from Bozeman to Mrs. Walker because the north line of the 147 acres conveyed to Mrs. Walker by Bozeman was the common line between the Rhode and Rains surveys.

It is presumed the calls in the field notes in the deed to Mrs. Walker spoke the truth and were consistent with each other. Weston v. Meeker (Tex.Civ.App.) 109 S.W. 461.

It was incumbent upon appellants to show an inconsistency in the field notes

when it is attempted to apply the same upon the ground. All of the bearing trees called for in the field notes of the various surveys and subdivisions thereof have disappeared.

As we view the evidence, it is insufficient to show a conflict between the call for the northwest corner of the Rains survey and the "bearing trees N. 63 E. 5 vrs." and between the call for the northwest corner of the M. O. Sheppard tract and the "sweetgum S. 65 E. 2 vrs" and insufficient to show that such bearing trees are at points other than the northwest corner of the Rains survey and northwest corner of the M. O. Sheppard tract respectively. It will serve no purpose to review the mass of evidence adduced upon the trial. In our opinion it is insufficient to raise an issue as to mistake in the corner calls mentioned and the court properly refused to submit the case to the jury.

█ Complaint is made of the action of the court in overruling special exceptions contained in the answer filed February 6th. These exceptions present the point of misjoinder because the plaintiffs' petition and pleas of intervention show the parties are claiming separate and distinct parcels of land in which they have no common or joint interest. The ruling is not shown by entry upon the minutes, but by bill of exception filed long after the adjournment of the term. It has been many times held that rulings upon demurrers will not be reviewed where they are shown only by bill of exception. Epting v. Nees (Tex. Civ.App.) 25 S.W.(2d) 717 (writ refused) and cases there cited.

█ We will say, however, that while the rule invoked by appellants is supported by the authorities (Hunt v. Johnson, 106 Tex. 509, 171 S.W. 1125; Allen v. Read, 66 Tex. 13, 17 S.W. 115; Clegg v. Temple Lumber Co. [Tex.Com.App.] 222 S.W. 971), nevertheless the ruling complained of is not reversible in the state of the record. The rule forbidding misjoinder is one of convenience and expediency and may be waived. Fall v. Weber (Tex.Civ. App.) 47 S.W.(2d) 365.

█ The judgment entry shows the case was called for trial upon February 5th and all parties announced ready for trial. It appears from the bill of exception the exceptions were not presented until February 6th and 7th. The delay in invoking the court's ruling upon the exceptions until after the case had proceeded to trial upon its merits constitute a waiver of any right to object to the misjoinder.

█ Furthermore, it is apparent no harm could have resulted from the ruling. What has been said shows the controversy is one of boundary which could and properly should be settled in one rather than separate suits by the plaintiffs and interveners. If separate suits had been filed it would have been entirely proper to consolidate same and try them as one suit. The ruling, therefore, if erroneous, is harmless.

█ Error is also assigned to the court's action in permitting Phillips to intervene after the original parties had announced ready and some evidence heard.

An intervention may be permitted at any time before the issues are determined. Zucht v. Jorrie (Tex.Civ.App.) 294 S.W. 687. Phillips is the owner of the 40 acres in the Rhode survey under lease to Bonds & Dillard Drilling Corporation. He owns the fee-simple title subject to the lease. It does not appear plaintiffs in error could have been in anywise prejudiced by his intervention and no abuse of discretion by the court is shown in permitting him to intervene.

█ It is further insisted O. E. Goolsby and Miss Goolsby, the fee owners of the 147-acre tract in the Rains, on which the Magnolia Company owns the oil and gas lease, and E. G. Richey, the fee owner of the land in the Rhode survey under lease to the Shasta Oil Company and Empire Gas & Fuel Company are necessary parties to the suit. We do not regard them as indispensable parties in the strict sense because they would not have been affected adversely by any judgment which might have been rendered. Not being parties, they would not be bound by the same, and the judgment which was in fact rendered inures to their benefit, and they cannot possibly be injured by its enforcement. On the contrary, they are benefited.

Affirmed.