## LONDON TERRACE, Inc., v. McALISTER.
### No. 13475.

Court of Civil Appeals of Texas. Dallas.
Feb. 4, 1944.

Rehearing Denied March 3, 1944.

Bonney & Paxton and M. M. Wade, all of Dallas, for appellant.

Albert S. Reagan, of Dallas, for appellee.

LOONEY, Justice.

London Terrace, Inc., a New York corporation, owner of a large apartment building located in the Borough of Manhattan, New York City, sued Raymond W. McAlister to recover balance claimed to be due on a lease contract. Plaintiff appealed from an adverse judgment based upon findings of a jury. The material facts are these: Plaintiff leased to the defendant an apartment for the period of two years;

defendant paid rent for 15 months, but refused to make further payments and abandoned the premises, claiming that plaintiff breached its obligation to keep the apartment sufficiently and comfortably heated as the weather conditions required.

Defendant specially plead that before signing the lease contract, plaintiff, through an authorized agent, "represented and covenanted with defendant that the premises leased would always have steam heat available"; that when the previously prepared lease contract was presented for execution, defendant said he would obtain the advice of his attorney before signing, but being assured by plaintiff's representative that the written contract contained nothing in derogation of the verbal representations and obligations, defendant signed without reading; that the verbal representations were fraudulently made, without any intention on the part of plaintiff to comply with same, they were fraudulently omitted from the written contract, and that plaintiff failed to comply with its verbal covenant to properly heat the premises. Defendant plead and rested his defense exclusively on the issue of fraud as above set out, and the case was submitted by the court to the jury on that theory, which, for reasons hereinafter stated, we have concluded was error, and under our view of the case it will not be necessary to determine whether or not defendant was negligent in not reading the contract before signing.

As heretofore shown, the allegedly fraudulent verbal representation that induced defendant to execute the contract was, "that the premises leased would always have steam heat available." In support of this allegation, defendant said plaintiff was not to furnish heat during the summer months, but that "they said within reason they would keep the heat on during the cold months and any time we had a cool day they would send up heat." It was for the alleged violation of this verbal representation or obligation on the part of the landlord to furnish heat as weather conditions required, that the defendant insisted constituted legal justification for his abandonment of the premises and refusal to pay further rents.

■ The pivotal question presented, in our opinion, is fundamental and is this: Was the verbal obligation of the landlord to keep the premises properly heated as the weather conditions required in any legal sense different from its obligation to furnish heat under the terms of the written contract? If no difference existed, that is, if the defendant would be entitled to urge same defense to the action and obtain same relief for breach by the landlord of its obligation to furnish heat, contained in the written contract, as he would for breach of the alleged verbal obligation, it follows, we think inescapably, there being no difference in a legal sense, fraud could not exist. The obligation of the landlord in regard to heating service, contained in the written contract, reads: "As long as Tenant is not in default under any of the provisions of this lease Landlord covenants to furnish, insofar as the existing facilities provide, the following services: (a) * * * (b) * * * (c) Heat at reasonable hours during the cold seasons of the year." Although differently phrased, we think the legal effect of the alleged verbal obligation of the landlord to furnish heat to the apartment and the corresponding obligation contained in the written contract, is the same, and that the defendant could obtain same relief for breach of one just as for breach of the other, and on the same evidence; this being true, the representation alleged and testified to by defendant to the effect that plaintiff's agent said the written contract contained nothing in derogation of the verbal representations made, in a legal sense was true.

The evidence, in our opinion, was sufficient to have sustained findings by the jury and judgment based thereon, to the effect that plaintiff failed adequately to heat the apartment within the meaning of the heating service provision of the written contract, but the defendant did not allege its breach; he relied exclusively upon allegations of fraud, which, for the reasons stated, we do not think was shown. It takes more than sufficient evidence to sustain a judgment, as it must be bottomed on proper pleadings as well (Rule 301, Vernon's Texas R.C.P., p. 308). For reasons heretofore stated, we think the judgment should be reversed and the cause remanded without prejudice to the right of the defendant to amend and allege breach of the heating provision of the written contract, and proceed in harmony with the views here expressed.

■ In view of the disposition made of the case, we will discuss and state our views on a question that doubtless will arise on another trial. The heating provision of the written contract, in its entirety,

reads as follows: "As long as Tenant is not in default under any of the provisions of this lease Landlord covenants to furnish, insofar as the existing facilities provide, the following services: (a) * * * (b) * * * (c) Heat at reasonable hours during the cold seasons of the year. Interruption or curtailment of any such services shall not constitute a constructive or partial eviction nor, unless caused by the gross negligence of Landlord, entitle Tenant to any compensation or abatement of rent. * * *" In providing that "Interruption or curtailment of any such services shall not constitute a constructive or partial eviction nor, unless caused by the gross negligence of the Landlord, entitle Tenant to any compensation or abatement of rent," we think it obvious that the landlord sought to relieve itself of the duty to exercise ordinary care to heat the apartment, and from the consequences of its failure to exercise such care. Such provision, in our opinion, being against the declared public policy of this state, is void. In the case of Galveston, H. & S. A. Ry. Co. v. Pigott, 54 Tex.Civ.App. 367, 116 S.W. 841–848, writ refused, the court said: "Cooley on Torts ([3d Ed.] p. 1485), after mentioning carriers and telegraph companies as among those who cannot relieve themselves from liability from their own negligence, says: 'The cases of carriers and telegraph companies have been specifically mentioned because it is chiefly in these cases that such contracts are met with but, although the reasons which forbid such contracts have special force in the business of carrying persons and goods, and of sending messages, they apply universally, and should be held to defeat all contracts by which a party undertakes to put another at the mercy of his own faulty conduct.'" Also see 10 T.J. § 130, pp. 220-221.

■■■ The public policy of a state is a law of the state and, nothing appearing to the contrary, the presumption will be indulged that the law of the State of New York on the subject is the same as in this state. See 17 T.J. § 84, pp. 297–300. However, if it should appear that the law of the State of New York is otherwise, yet the doctrine of comity would not require the courts of this state to enforce a foreign law or give effect to rights arising thereunder, if to do so would contravene the public policy of this state, or work an injustice to a citizen thereof. See 9 T.J. § 4, pp. 356-357. So, we conclude that the

provisions of the written lease contract that attempt to relieve the landlord of the consequences of its failure to exercise ordinary care is void and cannot be enforced in this state.

For reasons above stated, the judgment of the court below is reversed and the cause remanded for further proceedings in harmony with this opinion.

Reversed and remanded.

BOND, C. J., concurs in part, dissents in part.

BOND, Chief Justice (concurring in part and dissenting in part).

I am in accord with the majority only in reversing the judgment of the trial court. The facts being fully developed, as disclosed by the majority opinion, and all substantive issues adjudicated, a remand of the cause for another trial based on breach of the written contract in suit, is, in my opinion, an idle gesture.

On another trial, the court would be justified in abating the defensive theory advanced by the majority. The rental contract is clear and unambiguous; executed by the contracting parties in New York City, it involved the renting of an upper unit in an 18-story housing unit apartment, in which 11,000 people resided in 1,600 units. Appellee and wife first made a written application to lease a unit, selected the one inspected and became satisfied with the premises and equipment before executing the contract in suit. This application and inspection led to the voluntary execution of the contract and appellee and wife moved into the apartment on October 1, 1940, agreeing to pay an annual rental of $2,640 in equal monthly installments. They occupied the apartment through the winter of 1940-41, and to Dec. 16, 1941, of the winter of 1941-42, and paid the installments of rent as they became due to Jan. 1, 1942.

On December 16, 1941, defendant vacated the apartment and moved to Pittsburgh, Pa. On cross examination, defendant testified as follows:

"Q. You moved to Pittsburgh. Why didn't you get another apartment in New York? A. Because I took her (wife) to Pittsburgh in the William Penn Hotel that I knew gave heat, and they gave you all the heat you could get.

"Q. There was plenty of hotels in New York? A. Yes, but I didn't care to move

518

into another hotel in New York. I lived in a hotel in New York.

"Q. But you did go to Pittsburgh instead of New York? A. That is right."

The defendant's testimony further shows that he moved to Pittsburgh to carry on his advertising business from that point, and thereafter moved to Texas. It is clear, I think, that defendant vacated the leased premises without cause or reason other than convenience to himself; thus is liable for the unpaid portion of the rents.

The written application that defendant signed to secure the leased premises expressly provides: "The owner will not be bound by agreements or promises made by representatives unless mentioned in this agreement"; and the contract provides: "Landlord or Landlord's agents have made no representations or promises with respect to said building or demised premises except as herein expressly set forth. The taking possession of the demised premises by Tenant shall be conclusive evidence, as against Tenant, that said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken." It will thus be seen that the contracting parties expressly agreed that the written contract embodied all the terms and conditions affecting liability of the respective parties, and that the existing facilities were "in good and satisfactory condition"; therefore, I quote the material covenants in the contract involving the defensive theory advanced by the majority for the guidance of the trial court on remand of this cause:

"13. * * * Landlord covenants to furnish, insofar as the existing facilities provide, the following services: (a) Elevator service; (b) Hot and cold water in reasonable quantities at all times; (c) Heat at reasonable hours during the cold seasons of the year. Interruption or curtailment of any such services shall not constitute a constructive or partial eviction nor, unless caused by the gross negligence of Landlord, entitle Tenant to any compensation or abatement of rent. * * * Landlord may discontinue such service upon thirty (30) days' notice to Tenant without being liable therefor or in any way affecting the liability of Tenant hereunder. * * * It is understood, however, that due allowance shall be made by Tenant for reasonable delay caused by strikes or any other cause beyond Landlord's control. * * * It is expressly understood and agreed that any

covenants on Landlord's part to furnish any service pursuant to any of the terms or provisions of this lease, or to perform any act or thing for the benefit of Tenant, shall not be deemed breached if Landlord is unable to perform the same by virtue of a strike or labor trouble or any other cause whatsoever beyond Landlord's control." (Italicized for emphasis.)

It will be seen that defendant hinges his defense to plaintiff's cause of action upon breach first of a verbal contract, alleged to have been made previous to the written contract, in which plaintiff agreed to furnish sufficient heat, always available day and night in the apartment, as required and demanded by the wife of defendant; and second (paragraphs 6 and 7), defended on breach of the written contract in failing to furnish adequate heating facilities. It will be further seen that the defendant totally failed to prove any failure or breach on the part of plaintiff to support either defense; in consequence, the trial court refused to submit the issue to the jury as to breach of the written contract, and expressly adjudicated and decreed in judgment that the defendant, Raymond W. McAlister, take nothing against plaintiff, London Terrace, Inc., on the alleged breach of the above written agreement. Thus it is folly, in my opinion, to remand the cause to the trial court on an issue or theory raised by the majority, which has been litigated, and judgment rendered denying defendant the relief urged in defense of plaintiff's cause of action.

Defendant alleges "by way of cross action and further answer, * * * that as a result of the failure of plaintiff to furnish adequate heating facilities for the leased premises, plaintiff breached its lease agreement, and that defendant is not bound, as a matter of law, by the term obligatory therein contained, as applied to him." On such pleadings and the evidence adduced, the trial court entered the following judgment: "It is further ordered, adjudged and decreed by the Court that the defendant, Raymond W. McAlister, take nothing against the plaintiff, London Terrace, Inc., upon his cross-action filed in said cause." Thus it will be seen that the issue or theory of defense as suggested by the majority in remanding the cause was expressly pleaded by defendant, judgment rendered on the issue by the trial court, and no appeal or assignment of error on the action of the trial court; hence the judgment became

final, res adjudicata to further trial on that issue.

I am in accord with the majority holding, in effect that the prior negotiations, if any, between the contracting parties, previous to the execution of the written contract, must be considered as either waived or merged in the written agreement; and that the record on this appeal does not show fraud to modify or alter the written contract. Such holding finds support in authorities of this state: Janes v. Ferd Heim Brewing Co., Tex.Civ.App., 44 S.W. 896, writ refused; Bolt v. State Savings Bank, Tex.Civ.App., 179 S.W. 1119; Avery Co. v. Harrison Co., Tex.Com.App., 267 S.W. 254; Colt Co. v. Kelly, Tex.Civ.App., 270 S.W. 942; Browning-Ferris Mach. Co. v. Thomson, Tex.Civ.App., 58 S.W.2d 183; Distributors Inv. Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47; Super-Cold Southwest Co. v. Elkins, 140 Tex. 48, 166 S.W.2d 97. But to remand the cause to the court below for new trial on the independent ground of breach of the written contract which was litigated to final conclusion and from which no appeal was taken, or assignment of error presented, is, in my opinion, an arbitrary action by this court.

Furthermore, it will be seen that the written contract expressly limits the heating service of which defendant complains, to "insofar as the existing facilities provide," and that "if Landlord is unable to perform the same by virtue of * * * *any cause whatsoever beyond* Landlord's control," such failure shall not be deemed a breach of the contract by the landlord. It will be further seen that the contract provides (Sec. 18): "The taking possession of the demised premises by Tenant shall be conclusive evidence, as against Tenant, that said premises and the building of which the same form a part were in good and satisfactory condition at the time such possession was so taken." The record reveals that defendant offered no testimony touching the breach of any covenant in the written contract by plaintiff, hence the trial court was without authority to submit the issue, or theory of defense; and no complaint having been urged by defendant in this appeal in reference thereto, this Court is without power to raise the question, remand the cause and direct the action of the trial court as to the sufficiency of the evidence to sustain such defensive issue. Rule 279, T.R.C.P., declares: "Upon appeal all independent grounds of recovery or of

defense not conclusively established under the evidence and upon which no issue is given or requested shall be deemed as waived; * * * ."

Manifestly, defendant has had his day in court on the theory suggested by the majority, and the judgment of the trial court foreclosed the issue, hence, to remand the cause for a new trial will incur an excessively costly and unprofitable undertaking by appellant. The judgment of the court below should be reversed and rendered for appellant, and so believing, I respectfully dissent to a remand of the cause.