James Lewis ROBERTSON et al., Appellants,

v.

The ESTATE OF Byron M. McKNIGHT, Appellee.

No. 1269.

Court of Civil Appeals of Texas, Tyler.

Dec. 13, 1979.

Rehearing Denied Jan. 3, 1980.

Thomas H. Davis, George M. Fleming, Byrd, Davis & Eisenberg, Austin, for appellants.

Jack Ritter, Jr., Austin, for appellee.

C. C. Small, Jr., Small, Craig & Werkenthin, Austin, L. W. Anderson, Ray, Anderson, Shields, Trotti & Hemphill, Dallas, for intervenor.

Before SUMMERS, C. J., and MOORE and McKAY, JJ.

SUMMERS, Chief Justice.

This is an appeal from an order of the trial court granting the motion for summary judgment of appellee (defendant below).

The case arose out of an aviation accident in which the pilot, Byron McKnight, and his wife and passenger, Amelda Ann McKnight, died. James Lewis Robertson, executor and personal representative of the estate of Amelda Ann McKnight, brought this suit against the estate of Byron McKnight seeking damages for the wrongful death of Amelda McKnight due to the negligence of Byron McKnight as pilot of the accident aircraft. This action was brought pursuant to the Texas Wrongful Death Act, Tex.Rev.Civ.Stat.Ann. arts. 4671 and 4678 (Supp.1979).[1]

The crash of the aircraft occurred near Graford, Texas, on December 5, 1974. Both Byron and Amelda McKnight were residents of Hobbs, New Mexico, having moved there in 1964. They owned a home there, and Mr. McKnight operated a business in Hobbs. The plane was owned by a New Mexico corporation and was based in Hobbs, New Mexico. The pilot, Byron McKnight, held a private pilot's license issued by the F.A.A. to him in New Mexico. The estates of both decedents are being probated in the District Court of Lea County, Hobbs, New Mexico. In short, the McKnights were New Mexico citizens whose only connection with the State of Texas was the unfortunate incidence of the crash of the aircraft.

The 126th District Court of Travis County granted appellee's motion for summary judgment holding that Texas, rather than New Mexico law applied, and that the action was barred by the Texas doctrine of interspousal tort immunity. From this adverse ruling, appellants have appealed.

We affirm.

Appellants have predicated their appeal upon three points of error, contending that the trial court erred (1) in granting appellee's motion for summary judgment by failing to apply the law of the domicile of the parties in accordance with established Texas choice of law rules, (2) in applying the Texas doctrine of interspousal immunity because the proper choice of law is that of New Mexico, the state with the most significant contacts with the transaction, and (3) in granting appellee's motion for summary judgment in that the Texas doctrine of interspousal immunity should not be applied under the facts of this case.

One question presented by this case is whether the law of the domicile of the parties (New Mexico) governs in determining whether the husband's estate is immune from tort liability to the wife's estate. This question is of importance to the parties,

---

1. This and all other statutory references are to Texas Revised Civil Statutes unless otherwise noted.

since New Mexico has abolished interspousal tort immunity regarding acts of negligence, while Texas has not.

In 1886 the Texas Supreme Court adopted the common law doctrine of interspousal tort immunity in the case of *Nickerson and Matson v. Nickerson*, 65 Tex. 281 (1886). In this case the wife sued her husband and a third person for damages resulting from her false imprisonment. The court held that the main reason not to allow such action was public policy considerations. *Nickerson and Matson v. Nickerson*, supra at 285. These public policy considerations concern the welfare of the family and the peace and tranquility of the marriage. A suit for personal torts by one spouse against the other would disrupt the marital and family relationships. *Donsbach v. Offield*, 488 S.W.2d 494, 495–96 (Tex.Civ.App.—Austin 1972, no writ); *McGlothlin v. McGlothlin*, 476 S.W.2d 333, 334 (Tex.Civ.App.—San Antonio 1972, writ ref'd n. r. e.); *Latiolais v. Latiolais*, 361 S.W.2d 252, 253 (Tex.Civ.App.—Beaumont 1962, writ ref'd n. r. e.); 1 O. Speer, Speer's Marital Rights in Texas sec. 317 (4th ed. 1961).

In 1977, the Texas Supreme Court again had the opportunity to speak on this subject at a time when such immunity was under severe criticism from both the courts and legal scholars. Half of the states had completely abolished the doctrine; Texas, however, through our Supreme Court, refused to go that far. The court, in *Bounds v. Caudle*, 560 S.W.2d 925, 927 (Tex.1977), abolished the rule in *Nickerson* concerning interspousal tort immunity *only* to the extent that it would bar all claims for willful or intentional torts. The court reasoned that in suits such as these, the public policy considerations of peace in the home would no longer be a factor, since the domestic tranquility would have already been strained to the point where an intentional physical attack could take place, and such would not be further impaired by allowing a suit to be brought to recover damages for the attack. *Bounds v. Caudle*, supra at 927.

The court also held that the doctrine, aside from this exception of willful and intentional torts, should be maintained as a matter of public policy. The court stated:

"We recognize fully the importance of the family unit in our society and that peace and tranquility in the home are endowed and inspired by [a] higher authority than statutory enactments and court decisions."

*Bounds v. Caudle*, supra at 927. Thus, the doctrine is still with us today in Texas as to negligent tort actions, rightly or wrongly, and we are bound by it. As stated above, the majority of jurisdictions have either completely abrogated the doctrine or have limited its application, and with the *Bounds* case Texas falls into the latter category. See Note, 9 Tex.Tech.L.Rev. 659, 673 (1978). Regardless of our inclination on the foregoing, we feel it is the duty of this court to follow the mandates of the supreme court, as expressed in *Nickerson* and *Bounds* concerning interspousal tort immunity. *Scheffer v. Chron*, 560 S.W.2d 419, 423 (Tex.Civ.App.—Beaumont 1977, writ ref'd n. r. e.); *Warren v. Medley*, 521 S.W.2d 137, 139 (Tex.Civ.App.—Beaumont 1975, no writ); *Ball v. Gulf States Utilities Co.*, 123 S.W.2d 937, 940 (Tex.Civ.App.—Beaumont 1939, writ dism'd). It is not up to us to disregard or abolish a doctrine so long entrenched in our jurisprudence, especially in light of the fact that our supreme court felt no need to do so in *Bounds*.

■ Generally, actions based on tortious conduct are governed by the laws of the state where the acts occurred. In recent years however, a change has developed in the area of conflict of laws which holds that the law of the domicile of husband and wife controls the question of interspousal tort immunity. *Lederle v. United Services Automobile Association*, 394 S.W.2d 31, 33 (Tex.Civ.App.—Waco 1965) judgment dismissed and vacated pursuant to compromise settlement 400 S.W.2d 749 (Tex.1966). Approval of this position is found in RESTATEMENT (SECOND) OF CONFLICT OF LAWS sec. 169(2), Comment b, p. 506 (1971).

We feel that the opinion of the court of civil appeals in *Lederle* still has the force of

law. The controversy, by the time it reached the supreme court, was moot; however, when the case was at the civil appeals level, the controversy was still live and justiciable, and only the judgments of the courts below were vacated by the supreme court in *Lederle*, not the opinion. The supreme court dismissed the cause without an opinion on, or adjudication of, the merits of the controversy by that court. Thus, the appellate court would not retain jurisdiction to decide the controversy after the parties have settled it. See *United Services Automobile Association v. Lederle*, supra; *Railway Exp. Agency v. Spain*, 152 Tex. 198, 255 S.W.2d 509 (1953); *Hallmark Personnel of Texas, Inc. v. Franks*, 562 S.W.2d 933, 935 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ); *Blandin v. First-Wichita National Bank of Wichita Falls*, 398 S.W.2d 663, 664 (Tex.Civ.App.—Fort Worth 1966, no writ).

Notwithstanding this fact, we believe the law of Texas regarding interspousal tort immunity must still be applied in lieu of New Mexico law governing such immunity. The rule by which one state applies the law of another state is one of comity only, and such is exercised having due regard for the rights of its own citizens. Comity is not a matter of right, and being voluntary and not obligatory, the application of the doctrine rests in the sound discretion of the tribunal of the forum. *Nowell v. Nowell*, 408 S.W.2d 550, 553 (Tex.Civ.App.—Dallas 1966, writ dism'd) cert. denied 389 U.S. 847, 88 S.Ct. 53, 19 L.Ed.2d 116 (1967). We elect not to recognize the law of New Mexico that abolishes completely interspousal tort immunity, because to do so would contravene the public policy of this state concerning such immunity as expressed by our supreme court, as illustrated in *Bounds*, supra and *Nickerson*, supra.

To justify an application of the doctrine or principle of comity, it is generally necessary that the laws of the state where it is attempted to be invoked have a public policy that corresponds to the foreign law, so as not to work an injustice to a citizen thereof. *London Terrace, Inc. v. McAlister*, 179 S.W.2d 515, 517 (Tex.Civ.App.—Dallas), rev. on other grounds, 142 Tex. 608, 180 S.W.2d 619 (1944); *Portwood v. Portwood*, 109 S.W.2d 515, 523 (Tex.Civ.App.—Eastland 1937, writ dism'd). To justify a court in declining to enforce a right of action which accrued under the laws of a sister state, because of the policy of our laws, it should appear that it is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens. *State of California v. Copus*, 158 Tex. 196, 309 S.W.2d 227, 232 (1958). We believe the general interests of our citizens will be offended if New Mexico law regarding interspousal tort immunity would be followed here, and so we refuse to do so.

■ An additional point should be noted. Appellee in his brief contends that appellants have not complied with rule 184a, T.R.C.P., which allows for judicial notice of the laws of other states, because the law of New Mexico had not been properly presented or properly made part of the record in connection with this case. We disagree.

Rule 184a, T.R.C.P., reads as follows: "The judge upon the motion of either party shall take judicial notice of the common law, public statutes, and court decisions of every other state, territory, or jurisdiction of the United States. Any party requesting that judicial notice be taken of such matter shall furnish the judge sufficient information to enable him properly to comply with the request, and shall give each adverse party such notice, if any, as the judge may deem necessary, to enable the adverse party fairly to prepare to meet the request. The rulings of the judge on such matters shall be subject to review."

Appellee insists the law of New Mexico has not been properly pleaded and proved, and, consequently, that we must presume that New Mexico law is the same as Texas law. The record reveals, however, that appellants filed in opposition to appellee's motion for summary judgment, a memorandum of authorities citing the pertinent New Mexico law. The record further shows that this

memorandum was filed and a copy furnished to counsel of record for appellee before the motion was heard. In the absence of any objection to this memorandum for lack of notice, we hold that it was sufficient as a motion requesting the court to take judicial notice of the New Mexico law pursuant to rule 184a, T.R.C.P. *A & S Distributing Company, Inc. v. Providence Pile Fabric Corporation*, 563 S.W.2d 281, 285 (Tex.Civ.App.—Dallas 1977, writ ref'd n. r. e.). The trial court was authorized, and this court is authorized as well, to take judicial notice of the New Mexico authorities cited in the memorandum. This ruling, however, does not alter our disposition of this case concerning interspousal tort immunity in light of the discussion above. Appellant's first and third points of error are overruled.

■ Appellants contend by their second point of error that the district court erred in applying the Texas doctrine of interspousal immunity, and that the proper choice of law is that of New Mexico, the state with the most significant contacts with the transaction. Additionally, by way of a supplemental brief, appellants argue the 1975 amendments to the Texas Wrongful Death Act compel the courts to apply the significant relationship approach, and such amendments were intended to operate retrospectively. We disagree.

In this case we have a cause of action that accrued in Texas, and suit has been filed by the appellants in the courts of Texas, under the Texas Wrongful Death Act. They ask us to apply the doctrine of substantial contacts, however, which they argue would lead us to New Mexico law. Clearly the cause of action here was statutory in nature, since an action for wrongful death did not exist at common law. The first wrongful death statute was adopted in Texas in 1860 (Acts 1860, 8th Leg. ch. 35, p. 32, 4 Gammel's Laws of Texas 1394). The question regarding the application of the substantial contacts doctrine was answered by the Texas Supreme Court in *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979). The court held that Article 4678 compels the application of the lex loci delicti rule only in cases brought on statutory causes of action,

and since this article was part of a statutory scheme creating a wrongful death action, such application was mandatory. The court noted that there is a distinction between common law causes of action and those created by statute, and held the application of the lex loci delicti doctrine is permissive only in cases brought on common law causes of action. *Collins*, supra at 315.

It is true, as appellants point out, that Articles 4671 and 4678 were amended by the Texas legislature effective September 1, 1975, to allow for extraterritorial application of these two articles. The cause of action, in the instant case, accrued on December 5, 1974, the date the fatal airplane crash occurred, and was before the amendments took effect. This being the case, we are obliged to follow the version of the pertinent articles that existed at the time of the accident, as the supreme court did in a similar situation in *Collins*. The foundation of the action for wrongful death is the act or omission which causes the injury, such action accruing at the instant of death, *Missouri-Kansas-Texas R. Co. v. Hamilton*, 314 S.W.2d 114, 117 (Tex.Civ.App.—Dallas 1958, writ ref'd n. r. e.); *Slate v. City of Fort Worth*, 193 S.W. 1143, 1144 (Tex.Civ. App.—El Paso 1917, no writ), not at the time the suit is filed.

The proper application of the articles before the amendments was expressed in *Marmon v. Mustang Aviation*, 430 S.W.2d 182 (Tex.1968). That case also involved an airplane crash, where Texas residents crashed in Colorado. It was held the law of the place of the crash controls (lex loci delicti). *Marmon*, supra at 184. See also *Click v. Thuron Industries*, 475 S.W.2d 715 (Tex. 1972); *Pratt v. Royder*, 517 S.W.2d 922 (Tex.Civ.App.—Waco 1974, writ ref'd n. r. e.).

Additionally, the 1975 amendments do not have retroactive effect, as appellants contend. This exact question was presented in *Gutierrez v. Collins*, 570 S.W.2d 101, 103 (Tex.Civ.App.—El Paso 1978) affirmed 583 S.W.2d 312 (Tex.1979); and in *Cass v. Estate of Robert E. McFarland*, 564 S.W.2d

107, 110 (Tex.Civ.App.—El Paso 1978, no writ). Statutes will not be given retroactive effect in absence of a clearly expressed legislative intent to the contrary. Such intent must appear by fair implication from the language used in the statute. *Merchants Fast Motor Lines, Inc. v. Railroad Commission of Texas*, 573 S.W.2d 502, 504 (Tex.1978); *Coastal Industrial Water Authority v. Trinity Portland Cement Division, General Portland Cement Co.*, 563 S.W.2d 916, 918 (Tex.1978); *Cass v. Estate of Robert E. McFarland*, supra at 110. There is nothing in the language used in the amended statute which either plainly states or reasonably implies, that the legislature intended the amendments to operate retroactively.

Furthermore, it has been held that statutes that are procedural or remedial in nature do not come under the constitutional prohibition against retroactive application. *Merchant's Fast Motor Lines v. Railroad Commission of Texas*, supra at 504–505; *Phil H. Peice Co. v. Watkins*, 114 Tex. 153, 263 S.W. 905 (1924); *Southwestern Bell Telephone Co. v. City of Kountze*, 543 S.W.2d 871, 875 (Tex.Civ.App.—Beaumont 1976, no writ); *Boyd v. Dean*, 515 S.W.2d 753 (Tex.Civ.App.—Beaumont 1974, no writ). These amendments to Articles 4671 and 4678, however, have been adjudged to be a change in the substantive law, do not therefore fall into the above categorical exception, and thus will not be given retroactive application. *Cass v. Estate of Robert E. McFarland*, supra at 111. See also *Southwestern Bell Telephone Company v. City of Kountze*, supra at 875; *Penry v. Wm. Barr, Inc.*, 415 F.Supp. 126, 127 (E.D.Tex.1976). Appellant's second point of error is overruled.

█ Finally, a petition for intervention by Ranger Insurance Company was filed with the trial court on July 19, 1978, and an order granting such intervention was signed by the trial judge on July 31, 1978.

The estate of Byron M. McKnight opposed this order, and brought a motion to dismiss the intervention of Ranger Insurance Company to this court, contending that the order of intervention entered by the trial court was improper, since such order was made more than 30 days after its entry of final judgment in this cause, and such being the case the trial court lacked further jurisdiction of the cause.

The record reveals the trial court heard argument by counsel on appellee's motion for summary judgment on July 22, 1977, and signed the order granting same on June 2, 1978. Such order became final 30 days thereafter. The order permitting intervention was signed on July 31, 1978, more than 30 days after date of judgment. Ranger, having filed its petition to intervene after the case had been tried and disposed of by judgment, the intervention came too late. *Campbell v. Jefferson*, 453 S.W.2d 336, 340 (Tex.Civ.App.—Tyler 1970, writ dism'd); *Mast v. Shipp*, 123 S.W.2d 980, 980–81 (Tex.Civ.App.—Beaumont 1939, writ dism'd jdgmt. cor.); *Lamb v. Bonds & Dillard Drilling Corporation*, 107 S.W.2d 500, 504 (Tex.Civ.App.—El Paso 1935, no writ); *Zucht v. Jorrie*, 294 S.W. 687, 688 (Tex.Civ.App.—San Antonio 1927, writ dism'd); 1 McDonald, Texas Civil Practice sec. 3.48–b (rev. vol. 1965).

We therefore grant the estate's motion and dismiss the intervention of Ranger Insurance Company.

In summary, the Texas doctrine of interspousal tort immunity will be followed under the facts of this case. Tex.Rev.Civ. Stat.Ann. art 4672 (1952) provides that the wrongful act or negligence must be of such character as would, if death had not occurred, have entitled the party injured to maintain an action for such injury. In light of the immunity involved here, such action would not have been allowed, and accordingly we affirm the judgment of the trial court.