James Lewis ROBERTSON et al., Petitioners,

v.

The ESTATE of Byron M. McKNIGHT, Respondent.

No. B–9144.

Supreme Court of Texas.

Nov. 12, 1980.

Rehearing Denied Jan. 14, 1981.

Byrd, Davis & Eisenberg, Tom Davis and George M. Fleming, Small, Craig & Werkenthin, C. C. Small, Jr., Austin, for petitioners.

L. W. Anderson, Dallas, Jack Ritter, Jr. and John W. Pleuthner, Austin, for respondent.

GREENHILL, Chief Justice.

A New Mexico couple was killed when their plane crashed in Texas. The question here is whether the Texas doctrine of interspousal tort immunity bars a suit by the wife's estate against the husband's estate for wrongful death. We hold that the New Mexico law, which allows one spouse to recover from the other for injuries caused by negligence, applies to the instant cause.

On December 5, 1974, Byron McKnight piloted a plane from New Mexico. His wife, Amelda McKnight, was aboard. Both died when the plane crashed in Texas. Both Byron and Amelda were domiciliaries of New Mexico. They departed from New Mexico and intended to return to that state.

Robertson, as executor of Amelda's estate, sued Byron's estate for wrongful death in a district court in Travis County, Texas. On June 2, 1978, the trial court granted the motion for summary judgment filed by Byron's estate. That court, upon summary judgment, held that the Texas doctrine of interspousal tort immunity barred the suit. The court of civil appeals affirmed. 591 S.W.2d 639.

Robertson, as executor of Amelda's estate, alleged that Byron was negligent, and grossly negligent, in piloting the plane.

Under Texas law, one spouse may recover from the other only where injuries arise out of an intentional tort. *Bounds v. Caudle*, 560 S.W.2d 925 (Tex.1977). If the Texas law of interspousal tort immunity applies in this case, Robertson cannot recover.

The defendant estate has urged, and the court of civil appeals has held, that article 4678 [1] required the trial court to apply the Texas interspousal immunity doctrine under the rule of lex loci. Because the death occurred in 1974, the court had to apply article 4678 as it read before the 1975 amendments. At that time, article 4678 provided:

> Whenever the death or personal injury of a citizen of this State or of the United States ... has been or may be caused by the wrongful act, neglect or default of another *in any foreign State or country* for which a right to maintain an action and recover damages thereof is given by the statute or law of such foreign State or country, such right may be enforced in the courts of this State .... [Emphasis added.]

In several cases, we have noted that the Texas Wrongful Death Statute [2] had no extraterritorial effect before the 1975 amendments.[3] Therefore, the Legislature enacted article 4678 to allow persons to recover in Texas for a wrongful death which occurred outside Texas. *Click v. Thuron Industries, Inc.*, 475 S.W.2d 715 (Tex.1972); *Marmon v. Mustang Aviation, Inc.*, 430 S.W.2d 182 (Tex.1968). From the language emphasized above, it is clear that article 4678 *only* applied to deaths or injuries that occurred *outside* Texas. *Brown v. Seltzer*, 424 S.W.2d 671 (Tex.Civ.App.–Houston [1st Dist.] 1968, writ ref'd n.r.e.). Accordingly, article 4678 is not relevant to the consideration of this case.

1. All statutes discussed herein refer to Texas Revised Civil Statutes Annotated unless otherwise stated.

2. Article 4671.

3. The 1975 amendments allow an action for wrongful death for "an injury causing the death of any person occurring either within *or without this state.*" Texas Revised Civil Statutes Annotated article 4671 [emphasis added].

The Texas statute which does apply to this cause is the Texas Wrongful Death Statute, article 4671, as it read before the 1975 amendments.[4] Article 4671 contained no statutory choice of law to be applied in wrongful death actions where the death occurred in Texas. Since the statute is silent, we look to the common law of Texas to decide which state's law should apply.

Prior to our decision in *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex.1979), the common law rule in tort cases in Texas was the doctrine of *lex loci delicti*, which meant that the law of the place where the cause of action arose must prevail. The *Gutierrez* case involved personal injuries suffered in another jurisdiction. We held that the applicable law is to be determined by the most significant relationships test as set out in sections 6 and 145 of the Restatement (Second) of Conflicts.

■ This case involves interspousal tort immunity. We hold that the most significant relationships test applies to determine whether one family member is immune from tort liability to another family member as set out in section 169 of the Restatement (Second) of Conflicts. That section provides:

> § 169. Intra–Family Immunity
>
> (1) The law selected by application of the rule of § 145 determines whether one member of a family is immune from tort liability to another member of the family.
>
> (2) The applicable law will usually be the local law of the state of the parties' domicil (sic).

■ Byron and Amelda McKnight were residents of Hobbs, New Mexico, from 1964 until their death in 1974. The estates of

4. "An action for actual damages on account of the injuries causing the death of any person may be brought in the following cases:
   1. When an injury causing the death of any person is caused by the wrongful act, neglect, carelessness, unskillfulness, or default of another person ... such persons ... shall be liable in damages for the injuries causing such death ..."

both are being, or were, probated in New Mexico. Examination of the record reveals no contacts between their interspousal relationship and Texas other than the fact that the accident giving rise to this lawsuit occurred in Texas. Therefore, New Mexico has the most significant relationship to the parties. We hold that the New Mexico policy concerning interspousal tort immunity applies to this cause. This is the only question before us.

In this cause, the court of civil appeals reasoned that the Texas law of interspousal tort immunity had to be applied because the New Mexico law violated Texas policy. Although the policies of Texas and New Mexico differ as to interspousal immunity, that does not mean that the New Mexico rule is so contrary to our public policy that our courts will refuse to enforce it. We have stated that we will only refuse to enforce a foreign law which violates good morals, natural justice, or is prejudicial to the general interests of our own citizens. *Gutierrez v. Collins*, 583 S.W.2d 312 (Tex. 1979); *State of California v. Copus*, 158 Tex. 196, 309 S.W.2d 227 (1958).

While Texas does not permit spouses to recover from each other for negligently inflicted injuries, a rule which does permit such a suit does not violate good morals or natural justice. We note that a large number of states do permit such suits.[5]

It has been argued that it would be unfair to allow non–domiciled spouses to recover from each other when spouses domiciled in Texas are not permitted to recover. This argument goes to the question whether enforcing the New Mexico law is prejudicial to the general interests of our own citizens. The interspousal tort immunity was not created to punish persons for being Texas domiciliaries, but to protect domestic tranquility and conform with the marital property laws of our state. Since both of the spouses in this cause are domiciliaries of New Mexico and the estates involved are in New Mexico, we do not believe that allowing this suit will have a prejudicial effect on the citizens of this State.[6]

We therefore reverse the judgments of the courts below and remand this cause to the trial court to proceed to trial on the merits in conformity with this opinion.

Justice GARWOOD not sitting.

---

5. See Annotation, 29 A.L.R.3d 603 (1970) and cases cited therein.

6. It is sometimes argued that interspousal tort immunity is necessary to protect insurance companies against collusion between the spouses. The record indicates that the insurance in this cause was purchased in New Mexico. It seems logical to assume, therefore, that the insurer contracted with the McKnights in expectation that there would be no interspousal tort immunity.