**Barry LEE and Jim White,
Plaintiffs-Appellants,
Cross-Appellees,**

**v.**

**MILLER COUNTY, ARKANSAS,
Defendant-Appellee,
Cross-Appellant.**

No. 85–2598.

United States Court of Appeals,
Fifth Circuit.

Sept. 26, 1986.

Nicholas H. Patton, Young, Patton &
Folsom, Richard N. Dodson, Texarkana,

Ark., for plaintiffs-appellants, cross-appellees.

G. William Lavender, Lavender, Rochelle, Barnette, Franks & Arnold, Texarkana, Ark., for Miller County.

Before WISDOM, DAVIS, and JONES, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents the question whether Miller County, Arkansas, sharing the city of Texarkana with Bowie County, Texas, is immune from suit in Texas by Texas citizens alleging injuries as a result of Miller County's negligence. Relying on the Interstate Civil Defense and Disaster Compact enacted by Texas and Arkansas,[1] the United States District Court for the Eastern District of Texas found Miller County immune. We affirm the district court's decision, but we do so on the basis of comity. We conclude that the district court abused its discretion when it refused to extend immunity to Miller County as a matter of comity. We do not address the question of Miller County's immunity under the Interstate Civil Defense and Disaster Compact.

### I.

This case is a diversity action arising from a helicopter crash in Mount Pleasant, Texas. The plaintiffs are Barry Lee and Jim White, both citizens and residents of Texas. At the time of the crash Jim White was employed as a lieutenant in the Texarkana, Texas, city police department and also served as civil defense director for Bowie County, Texas. Barry Lee was employed at the Red River Army Depot and was a civil defense worker for Bowie County.

The defendant in this action is Miller County, Arkansas. Miller County, Arkansas and Bowie County, Texas are adjoining counties. Texarkana, Arkansas is located in Miller County, and Texarkana, Texas is located in Bowie County. The two communities of Texarkana are in fact two parts of the same community. As a result Miller County, Arkansas and Bowie County, Texas cooperate in providing many public services. One service in which the counties cooperate is civil defense. Each county aids the other by providing personnel and equipment for training exercises and in emergency situations. In fact, the two counties have substantially combined their respective civil defense agencies into a joint agency with offices in Texarkana, Arkansas.

In 1979, Miller County procured a helicopter from the Civil Defense Agency of the Department of the Army which it used for a number of purposes including law enforcement, public relations, and civil defense. On numerous occasions, Miller County provided the helicopter to Bowie County for civil defense purposes at a nominal fee. In February 1982, the helicopter's lower idler pulley bearing failed. The helicopter was taken to an airport in Texarkana, Texas where the idler assembly was replaced.

On the day of the accident, May 1, 1982, Jesse Jordon, the chief pilot for Miller County, flew the helicopter to an air show in Mount Pleasant, Texas. At the air show, Jordon instructed White to take Lee for a ride in the helicopter. White and Lee adduced evidence that the flight was a "joy ride", but according to Miller County the fatal trip was an orientation flight for Lee, a civil defense worker interested in getting his helicopter license. The district court found that the flight was civil defense related. During this flight, the idler assembly failed causing the helicopter to crash. Both White and Lee suffered serious injuries.

White and Lee instituted this action in the United States District Court for the Eastern District of Texas in June of 1982.[2]

---

**1.** Tex.Civ.Stat.Ann. art. 6889–5 (Vernon 1960 & Supp.1986); Ark.Stat.Ann. § 11–2002 (1976).

**2.** The complaint originally named Marlin Rockwell Company, a Division of TRW, Inc. as the

Miller County was named as a defendant in early 1984.[3] The case went to trial before a jury in January of 1985.[4] The jury found Miller County 100 percent liable and awarded $150,000 and $100,000 in damages to Lee and White respectively.

Miller County moved for a judgment notwithstanding the verdict based upon the following grounds; 1) Arkansas law is applicable to this controversy and Arkansas law provides complete immunity to Miller County;[5] 2) Miller County is immune as a matter of comity; 3) Miller County is immune under the Interstate Civil Defense and Disaster Compact enacted by both Texas and Arkansas.

Finding the applicable law to be that of Texas, the district court rejected Miller County's immunity argument based upon Arkansas state law. The district court also refused to extend immunity to Miller County as a matter of comity. The district court, however, accepted Miller County's immunity argument based upon the Interstate Civil Defense and Disaster Compact. Lee and Miller appealed from that part of the district court's opinion granting Miller County immunity under the Compact. Miller County cross-appealed contending that the district court should have selected Arkansas law and that even if Texas law were applicable, the district court should have extended immunity to Miller County as a matter of comity.

We do not find the district court's selection of Texas law erroneous,[6] but we do

---

defendant alleging that plaintiffs were flying in a Hughes model 269C helicopter. The plaintiffs filed an amended complaint adding Hughes Helicopter, Incorporated as a defendant alleging that Hughes defectively designed and installed the idler pulley system.

**3.** In this case, the district court sits as a court of the State of Texas. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). There is no question that states and their agencies and subdivisions are amenable to suit in the courts of a sister state. *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979). We note that the Eleventh Amendment, which bars suits against states in federal court, is not implicated in this action because the defendant in this matter is not the State of Arkansas, but rather an Arkansas county. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart & Wechsler's The Federal Courts and the Federal System* 690 (2d ed. 1973) ("A suit against a county, a municipality, or other lesser governmental unit is not regarded as a suit against a state within the meaning of the Eleventh Amendment."), *quoted in, Biscoe v. Arlington County,* 738 F.2d 1352, 1357 n. 2 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1159, 105 S.Ct. 909, 83 L.Ed.2d 923 (1985). Because the real party in interest in this case is Miller County and not the State of Arkansas, *see* Ark. Const. art. XII, § 12 (state not liable for debts of counties), Miller County is not shielded by the Eleventh Amendment. *Laje v. R.E. Thomason Gen. Hosp.,* 665 F.2d 724, 727 (5th Cir.1982).

**4.** The course of proceedings in this matter are substantially more complicated than we have described here. Those complications are not relevant for the purposes of this appeal.

**5.** Arkansas provides immunity to its counties for their negligent acts. "It is hereby declared

to be the public policy of the State of Arkansas that all counties, municipal corporations, school districts, special improvement districts, and any other political subdivisions of the State shall be immune from liability for damages, and no tort action shall lie against any such political subdivision, on account of the acts of their agents and employees." Ark.Stat.Ann. § 12–2901 (1979). We note, however, that it is an open question whether Miller County could have asserted as of right its immunity under Arkansas law had the federal district court chosen Arkansas law as that applicable to the controversy. It is not clear whether a county's immunity under the laws of its own state necessarily follows it into another state. *See Biscoe,* 738 F.2d at 1359–60; *see also Hall v. University of Nevada,* 8 Cal.3d 522, 105 Cal.Rptr. 355, 356, 503 P.2d 1363, 1364 (1972) (en banc), *cert. denied,* 414 U.S. 820, 94 S.Ct. 114, 38 L.Ed.2d 52 (1973) (immunity does not follow state when it ventures into another sovereign's territory).

**6.** The district court sitting as a Texas court, correctly determined that its choice of law was to be determined under the most significant relationship test as enunciated in §§ 6 and 145 of the Restatement (Second) of Conflicts. *See Gutierrez v. Collins,* 583 S.W.2d 312 (Tex.1979). The court then considered the factors listed under that test, and deciding that the State of Texas had the most significant relationship to the controversy, the court chose as the applicable law that of Texas. We find that choice proper. The record contains voluminous evidence of Texas's contacts—both quantitative and qualitative—with this controversy; both of the parties were Texas citizens, the crash occurred in Texas, and the defective pulley that caused the crash was installed in Texas.

Miller County makes much of the fact that the parties' relationship was centered in Arkansas.

conclude that the court abused its discretion when it refused to grant immunity to Miller County on the basis of comity.

## II.

Comity is a principle under which the courts of one state give effect to the laws of another state or extend immunity to a sister sovereign not as a rule of law, but rather out of deference or respect. Courts extend immunity as a matter of comity to foster cooperation, promote harmony, and build goodwill.

The district court found no case in which a Texas court was confronted with a request by another sovereign for immunity as a matter of comity. Our search for such a case has also been fruitless. In deciding how a Texas court would deal with such a request, we therefore look to other Texas decisions involving questions of comity.

A review of the leading opinion of the Texas Supreme Court dealing with comity, *McElreath v. McElreath*,[7] leads to the conclusion that, in the interest of promoting cooperative federalism, a Texas court will recognize the law of another state as a matter of comity as long as the sister state's law does not conflict with the public policy of Texas. McElreath involved the enforcement of an Oklahoma divorce decree, and in that case the Texas Supreme Court applied the law of the sister state notwithstanding that it was at odds with the equivalent provision in Texas law.[8] Although the laws of the two states were not in harmony, enforcement of the Oklahoma law did not violate Texas public policy.

The Supreme Court of Texas in *Robertson v. Estate of McKnight*,[9] a case dealing with a related issue,[10] reaffirmed that Texas courts will enforce another state's law unless it is contrary to Texas public policy. The *Robertson* court made clear that mere disparity between the law of Texas and that of the other state invoked is not enough to preclude enforcement of the other sovereign's law. Rather, the law of the other state sought to be recognized in Texas must be so antithetical to Texas public policy as to violate "good morals, natural justice, or [be] prejudicial to the general interest of [Texas] citizens."[11]

From these cases, we extract the principle that Texas courts will recognize another state's law unless it is repugnant to Texas public policy. Although this does not translate effortlessly into a rule concerning immunity as a matter of comity, we believe the same principles should apply. Unless extending immunity to another state or its subdivision would violate Texas public policy, a Texas court would give effect to the law of that state.[12] Sitting as a court of the State of Texas under diversity jurisdiction, the district court is bound to this same principle.

## III.

With this overview of Texas comity jurisprudence in mind, we turn now to the dis-

---

But Miller County also notes that Texarkana, Arkansas and Texarkana, Texas are really part and parcel of the same community. We therefore give little weight to the fact that the relationship of the parties happened to center around the Arkansas portion of Texarkana rather than the Texas portion. Indeed, the Texarkana airport, which is where the relationship centered and which is in Texarkana, Arkansas, is partially owned by Texarkana, Texas. That the district court applied Texas law to this controversy surely could not have come as a shocking surprise to the parties.

7. 162 Tex. 190, 345 S.W.2d 722 (1961).

8. *Id.* 345 S.W.2d at 724.

9. 609 S.W.2d 534 (Tex.1980).

10. *Robertson* presented the question whether in a conflicts of law situation a Texas court would apply the law of a sister state that was at odds with Texas law.

11. *Id.* at 537.

12. Although this case involves a request for immunity by a county and not by a state, we think the same analysis is proper. *See, e.g., Biscoe,* 738 F.2d 1352, applying general comity analysis to immunity request from county. We do note, however, that when weighing the interests of the two sovereigns the court may take into account the fact that the party requesting immunity is a county.

trict court's decision. At the outset, we note that in Texas the decision to extend comity rests in the sound discretion of the trial court.[13] Unless the district court abused its discretion in refusing to extend immunity to Miller county, we must therefore allow that refusal to stand. We are not free to substitute our own judgment for that of the district court. Rather we must accord the district court's decision a high presumption of correctness and only overturn that decision if it is based upon clearly erroneous facts or an erroneous conclusion of law.[14] We are not, however, unmindful of the fact that appellate courts in Texas are not loath to overturn a lower court's failure to accept the law of another sovereign as a matter of comity.[15] We conclude that in refusing to extend immunity as a matter of comity, the district court relied on improper conclusions of law and failed to consider certain salient facts that counsel in favor of extending immunity.

### A. *Public Policy of Texas.*

In refusing to extend immunity as a matter of comity, the district court was influenced by its determination that under the Texas Tort Claims Act,[16] a Texas county would not have been immune had it, rather than the Arkansas County, been the defendant in this very same matter. From this determination, the district court concluded that the public policy of Texas was at odds with extending immunity to Miller County and therefore, comity was improper.

With all due respect to the district court, we find this line of reasoning flawed in both its premise and conclusion. First, it is not at all clear that the Texas Tort Claims Act would in any way immunize a Texas county had it been the defendant in this matter. The Texas Tort Claims Act is a limited waiver of sovereign immunity with respect to injuries caused by the State or its subdivisions "arising from the operation or use of a motor-driven vehicle [or] motor-driven equipment".[17] Although no Texas court has confronted the question, it is possible that the terms "motor-driven vehicle" and "motor-driven equipment" do not include helicopters.[18] If these terms were so interpreted, a Texas county would be completely immune from any suit involving a helicopter accident. Indeed, even if the Tort Claims Act would have applied, the waiver in that act is limited to $100,000 per person injured[19]—substantially less than the jury awarded Barry Lee in this case. It is beyond question that Texas

---

13. "Comity is not a matter of right, and being voluntary and not obligatory, the application of the doctrine rests in the sound discretion of the tribunal of the forum." *Robertson v. Estate of McKnight,* 591 S.W.2d 639, 642 (Tex.Civ.App. 1979), *rev'd on other grounds,* 609 S.W.2d 534 (1981). *See also Nowell v. Nowell,* 408 S.W.2d 550, 553 (Tex.Civ.App.1966) (writ dismissed), *cert. denied,* 389 U.S. 847, 88 S.Ct. 53, 19 L.Ed.2d 116 (1967).

14. *Cf. Commonwealth Life Ins. Co. v. Neal,* 669 F.2d 300, 303–04 (5th Cir.1982), discussing the standard of review of discretionary denial of injunctive relief.

15. See *McElreath,* 345 S.W.2d 722; *see also Robertson,* 609 S.W.2d 534.

16. Tex.Civ.Stat.Ann. art. 6252–19 (Vernon 1970), *repealed by* Acts 1985, 69th Leg., p. 7218, ch. 959, § 9(1), (effective Sept. 1, 1985), *replaced with* Tex.Civ.Prac. & Rem.Code Ann. §§ 101.001 *et seq.* (Vernon 1986) (continuing same general policy).

17. Tex.Civ.Stat.Ann. art. 6252–19 § 3; *see also* Tex.Civ.Prac. & Rem.Code Ann. § 101.021(1)(A) (new provision using same terms).

18. *See, Williams v. State,* 698 S.W.2d 266, 269 (Tex.App.1985), construing a Texas penal statute and stating: "Enactments of the Texas Legislature, decisions by the courts of this State, dictionary definitions and common understanding and usage all dictate that the term 'motor vehicle' is associated with land travel...." *See also* Note, *What Constitutes a "Motor Vehicle" Under the Texas Tort Claims Act?,* 31 Baylor L.Rev. 592, 598 (1979) (advocating broad definition of "motor-driven vehicle" that would include "any self propelled *wheeled land* vehicle capable of transporting persons or property") (emphasis added). *But see McLemore v. State,* 669 S.W.2d 856, 858 (Tex.App.1984) (airplane is "motor-propelled vehicle" for purposes of criminal statute prohibiting unauthorized use of such a device).

19. Tex.Civ.Stat.Ann. art. 6252–19 § 3; *see also* Tex.Civ.Prac. & Rem.Code Ann. § 101.023(b) (new provision with same limit).

continues to recognize the virtues of sovereign immunity from actions such as the one at issue. Had the defendant in this action been a Texas county, it is clear that it would have been completely or partially immune. Therefore, it would not be repugnant to the public policy of Texas for a Texas court to extend immunity to Miller County in this case. Even if a Texas county would not have been completely immune—a question that does not admit of a clear answer—it could hardly be said that extending immunity would be so at odds with Texas public policy as to be violative of "good morals [or] natural justice."[20]

### B. *Nevada v. Hall*

It appears that the district court misread *Nevada v. Hall*.[21] The *Hall* case arose out of an automobile accident occurring in California. In that accident, a Nevada State employee, while acting within the scope of his employment, negligently injured several California residents. The California residents sued the State of Nevada in a California state court. Nevada asserted immunity from the action stating that it could be sued only in a Nevada state court. Alternatively, Nevada argued that the California court was required to recognize the $25,000 limit on recoveries found in Nevada's statutory waiver of sovereign immunity. The California court rejected Nevada's claim of immunity and refused to recognize the $25,000 limit. The California Supreme Court noted that California had *completely* waived sovereign immunity and ruled that in an accident in California in which California residents had been negligently injured by an employee of Nevada, it would be obnoxious to the public policy of California if Nevada were allowed to claim sovereign immunity or to limit the damages it would pay.[22] After a remand and trial, the United States Supreme Court upheld the judgment against Nevada ruling that nothing in the Constitution, either express or implied, required California to comply with Nevada's request.[23]

Our review of the district court's "Decision and Rationale" convinces us that the district court read *Hall* as support for its refusal to extend immunity as a matter of comity. But *Hall* offers no such support. *Hall* did not address whether a state court *should* refuse to extend immunity as a matter of comity, but only *whether* it *could* do so. Indeed, the United States Supreme Court in *Hall* specifically noted:

> "It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability. They are free to do so."[24]

If anything, *Hall* counsels the states to extend immunity as a matter of comity.

In the wake of *Nevada v. Hall*, courts have decided several cases involving the question of immunity for other states or their subdivisions as a matter of comity. In a substantial and growing minority of these cases, the courts of one state have extended immunity to another state.[25] Other courts have, however, refused to extend immunity as a matter of comity.[26]

---

**20.** *See Robertson,* 609 S.W.2d at 537.

**21.** 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979).

**22.** *Hall v. University of Nevada,* 8 Cal.3d 522, 105 Cal.Rptr. 355, 503 P.2d 1363.

**23.** Because we find that Miller County is immune as a matter of comity, we do not address the question left open in *Nevada v. Hall:* whether the full faith and credit clause of the United States Constitution, U.S. Const. art. IV, § 1, requires a forum state that has not completely waived sovereign immunity to recognize the immunity of a sister state.

**24.** 440 U.S. at 426, 99 S.Ct. at 1191, 59 L.Ed.2d at 429.

**25.** *See Ramsden v. Illinois,* 695 S.W.2d 457 (Mo. 1985) (en banc); *Simmons v. State,* 670 P.2d 1372 (Mont.1983); *Newberry v. Georgia Dept. of Industry & Trade,* 286 S.C. 574, 336 S.E.2d 464 (1985) (overruling lower court and extending immunity as matter of comity notwithstanding that forum state had abolished sovereign immunity).

**26.** *See Peterson v. Texas,* 635 P.2d 241 (Colo.Ct. App.1981); *Struebin v. State,* 322 N.W.2d 84 (Iowa), *cert. denied,* 459 U.S. 1087, 103 S.Ct. 570, 74 L.Ed.2d 933 (1982); *Mianecki v. Second Judicial Dist. Court,* 99 Nev. 93, 658 P.2d 422, *cert.*

For two reasons, we are not concerned with those decisions refusing to extend immunity. First, comity doctrine varies from state to state. That some states may be hesitant to apply the principle of comity to other states has little to do with whether a Texas court would choose to do so—unless, of course, the state in question had previously rejected a request by Texas for immunity. Second, in all but one of the cases in which a court refused to extend immunity as a matter of comity, it was clear that extending immunity would do violence to the public policy of the forum state.[27] Extending immunity to Miller County will not offend the public policy of Texas.

We find that the court erred to the extent it relied on *Hall* in refusing to extend comity.

### C. *Civil Defense Cooperation*

As noted, one state does not extend comity to another as a result of any duty, but rather out of deference or respect. The state extending comity often does so to maintain harmony and foster cooperation. We can think of very few situations that present as starkly the need to maintain harmony and foster cooperation as the one before us. As was the case with the bucket brigades used to battle fires decades ago, the need for cooperation in civil defense matters is paramount. All parties must feel that they are part of the same team and that the highest priority is dealing with the crisis at hand. When an emergency arises there can be no time for the parties to squabble as to terms and conditions; the emergency must be dealt with immediately.

Miller County, Arkansas and Bowie County, Texas have cooperated on civil de-fense matters for several years. On numerous occasions, civil defense workers from one county have crossed the Arkansas-Texas state line in aid of workers from the other county. The helicopter involved in the accident at issue was used by both counties as part of their civil defense operations. The plaintiffs were both Bowie County, Texas civil defense workers. The district court found that notwithstanding the competing characterizations of the parties, the fatal helicopter flight was civil defense related.

It is true that the parties were not responding to an emergency situation at the time of the crash, but we believe that even in the present situation, imposing liability upon Miller County would do harm to the goals of harmony and cooperation. Liability would chill Miller County defense workers from participating in preparedness activities with civil defense workers from Texas. This would surely limit the effectiveness of the units when working together in an actual emergency. Moreover, liability in this situation might cause ill feelings that could lead to a breakdown in communication or worse, could lead Miller County to refuse to assist civil defense personnel from Bowie County in emergency situations. Although we do not address whether the Interstate Civil Defense and Disaster Compact immunizes Miller County from liability in this case, the enactment of this law immunizing certain non-Texas parties involved in civil defense activities in Texas,[28] shows that the state is well aware of the need for cooperating with other states in civil defense matters. The need is obvious in the case of a city such as Texarkana which straddles the Texas-Arkansas line.

---

denied, 464 U.S. 806, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); *Ehrlich-Bober & Co. v. University of Houston,* 49 N.Y.2d 574, 427 N.Y.S.2d 604, 404 N.E.2d 726 (1980); *Biscoe v. Arlington County,* 738 F.2d 1352.

**27.** *See Struebin,* 322 N.W.2d at 86–87; *Mianecki,* 658 P.2d at 425; *Biscoe,* 738 F.2d at 1357; *see also Ehrlich-Bober & Co.,* 427 N.Y.S.2d at 608, 404 N.E.2d at 730 (Texas agency was not seeking immunity as matter of comity, but rather

was seeking recognition of restrictive venue provision; New York court found this provision at odds with New York public policy). *But see Peterson,* 635 P.2d at 242–43 (refusing to extend immunity notwithstanding that it was unclear whether immunity would violate Colorado public policy).

**28.** Tex.Civ.Stat.Ann. art. 6889–5.

Extending immunity to Miller County would clearly not be "prejudicial to the general interest of [Texas] citizens."[29] Rather, immunity would promote that general interest; when a civil defense emergency arises, the residents of Bowie County, Texas will be able to depend on personnel and equipment from Miller County.[30] We think it clear that a Texas court would have accorded this fact great weight in deciding whether to extend immunity to Miller County as a matter of comity. Our reading of the district court's Decision and Rationale convinces us that in considering the immunity issue the district court considered it to be of little or no importance that the fatal trip had been civil defense related and that liability on Miller County could threaten the effectiveness of the civil defense operations of Bowie County, Texas. This was clear error.

## IV.

Our review of the district court's Decision and Rationale in the light of the proclivity of Texas courts to recognize the laws of another state as a matter of comity convinces us that the district court was incorrect in refusing to extend immunity to Miller County as a matter of comity. Indeed, given the district court's erroneous conclusions of law and assessment of fact, we find that this refusal was an abuse of discretion.

If this crash had occurred in Arkansas, it is beyond question that Miller County would have been immune under the Arkansas Code. It is also beyond question that if the defendant were a Texas county, rather than an Arkansas county, and the crash had occurred as it did in Texas, the Texas county would have been either completely or partially immune under the Texas Code. The pattern is clear. Both states have a policy in favor of some form of immunity in

a situation such as this. We do not believe that the fortuity of an Arkansas county being involved in a helicopter crash in Texas is an appropriate occasion to circumscribe the clear intent of lawmakers in both Texas and Arkansas. We therefore affirm the decision of the district court granting immunity to Miller County, but we do so on the basis of comity. By so doing, we take no stand on the policy of sovereign immunity; we simply follow the dictates of state law that provides the rules of decision in this diversity action.

Because we affirm the district court's judgment notwithstanding the verdict for the reasons we have stated, we do not address the Appellants' contention that the district court erred in granting immunity to Miller County on the basis of the Interstate Civil Defense and Disaster Compact.

The judgment is affirmed for the reasons stated in this opinion.

---

**29.** *Robertson,* 609 S.W.2d at 537 (emphasis added).

**30.** It is true that the specific interests of two Texas citizens, Barry Lee and Jim White, will be harmed if Miller County is immune. Our extending immunity to Miller County in this action does not mean, however, that victims like

Lee and White will be left without a remedy. Arkansas provides an administrative procedure under which the victims of negligent acts by the State of Arkansas or its counties can seek redress. Ark.Stat.Ann. §§ 13–1401 et seq., 12–2902 (1979 & Supp.1985).