In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00079-CV
______________________________


GLENN MARTIN GREENWELL AND
THE CITY OF TEXARKANA, ARKANSAS, Appellants
 
V.
 
APRIL NICOLE BROWN DAVIS, Appellee


                                              

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 04C0089-202


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            The City of Texarkana, Arkansas, and Glenn Martin Greenwell appeal the trial court's denial
of their joint motion for partial summary judgment based on sovereign immunity under Arkansas
law. The squad car being driven by Greenwell, an on-duty police officer with the City of Texarkana,
Arkansas, and a vehicle driven by April Nicole Brown Davis collided on the Texas side of State Line
Avenue. The City and Greenwell raise two issues on appeal: 1) Do the City and Greenwell have
standing to bring an interlocutory appeal based on the denial of their motion for summary judgment?
and 2) Did the trial court err in refusing to grant the motion for summary judgment based on
sovereign immunity and official immunity under Arkansas law? Because we answer each of these
questions in the affirmative, we reverse the judgment of the trial court.
            State Line Avenue is a major thoroughfare in the City of Texarkana, which straddles the
border between Texas and Arkansas. The northbound lanes of State Line Avenue are in Arkansas,
but the southbound lanes are in Texas. On March 15, 2002, Davis' and Greenwell's vehicles collided
on the Texas side of State Line Avenue. At the time of the collision, Greenwell was acting in the
scope of his employment as a police officer with the City. Davis filed suit in Texas against the City
of Texarkana, Arkansas, and Greenwell alleging that the negligent conduct of Greenwell caused the
collision and alleging that her damages exceeded $500,000.00. The City filed a motion for partial
summary judgment alleging that Arkansas sovereign immunity should be applied through the
doctrine of comity. According to the City, Arkansas law waives sovereign immunity only for the
amount covered by liability insurance. See Ark. Code Ann. § 21-9-301 (2005). The trial court
found that applying the Arkansas statute would violate Texas public policy and denied the motion
for partial summary judgment.
            We first examine the doctrines of sovereign immunity and comity. We then address whether
we have jurisdiction to hear this interlocutory appeal. We conclude we have jurisdiction over both
the City's and Greenwell's appeals. Next, we discuss what standard of review should govern our
analysis and hold that we should review de novo the trial court's decision. We then consider whether
the Full Faith and Credit Clause requires us to recognize Arkansas law. Because both states have
significant contacts with the transaction, the United States Constitution does not require Texas to
recognize Arkansas law if that law violates Texas public policy. Last, we consider whether the trial
court erred in concluding that the Arkansas sovereign immunity law is contrary to Texas public
policy. Given the policy of promoting amicable relationships by recognizing a sister state's law, the
extent of the difference in the laws is not so contrary to Texas public policy that we should refuse
to enforce the Arkansas law.
I.         Sovereign Immunity Doctrine
            The doctrine of sovereign immunity,


 as developed at common law, originated in the feudal
system. Nevada v. Hall, 440 U.S. 410, 414–15 (1979). The doctrine rested on the fiction that the
"King could do no wrong." Id. at 415. This fiction has, of course, been rejected, but the doctrine
of sovereign immunity, or governmental immunity, continues to be recognized under the common
law. Concerning this doctrine, Alexander Hamilton wrote, "It is inherent in the nature of sovereignty
not to be amenable to the suit of an individual without its consent." The Federalist No. 81
(Alexander Hamilton). As explained by Justice Holmes, sovereign immunity rests "on the logical
and practical ground that there can be no legal right as against the authority that makes the law on
which the right depends." Hall, 440 U.S. at 415–16 (quoting Kawananakoa v. Polyblank, 205 U.S.
349, 353 (1907)); see Hosner v. De Young, 1 Tex. 764, 769 (1846). In addition, sovereign immunity
is justified based on the concern that suits against a state would deplete the state's financial resources
necessary to operate the government. See Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 695
(Tex. 2003). "Most sovereigns have long since abandoned the fiction that governments and their
officials can 'do no wrong.' To varying degrees, states and the federal government have voluntarily
relinquished the privilege of absolute immunity by waiving immunity in certain contexts." Id. Both
Texas and Arkansas have enacted statutes which grant limited waivers of sovereign immunity.
            A.        Arkansas Partial Waiver of Immunity
            Arkansas has waived sovereign immunity only to the extent that the governmental entity's
liability is covered by liability insurance. Section 21-9-301 of the Arkansas Code provides:
(a) It is declared to be the public policy of the State of Arkansas that all
counties, municipal corporations, school districts, special improvement districts, and
all other political subdivisions of the state and any of their boards, commissions,
agencies, authorities, or other governing bodies shall be immune from liability and
from suit for damages except to the extent that they may be covered by liability
insurance.
(b) No tort action shall lie against any such political subdivision because of
the acts of its agents and employees.
Ark. Code Ann. § 21-9-301. Section 21-9-301 is a limited waiver of sovereign immunity. City of
Caddo Valley v. George, 9 S.W.3d 481, 484–85 (Ark. 2000). The statute covers municipal officers
and employees acting in the scope of their employment, as well as the municipalities themselves. 
Autry v. Lawrence, 696 S.W.2d 315, 316 (Ark. 1985); Matthews v. Martin, 658 S.W.2d 374, 375
(Ark. 1983). Under Arkansas law, recovery in this case is limited to $20,000.00.



            B.        Texas Partial Waiver of Immunity
            Texas also has a limited waiver of sovereign immunity for negligence in the use of motor-driven equipment. The Texas Tort Claims Act provides in pertinent part:
A governmental unit in the state is liable for:
(1) property damage, personal injury, and death proximately caused by the
wrongful act or omission or the negligence of an employee acting within his scope
of employment if:
(A) the property damage, personal injury, or death arises from the
operation or use of a motor-driven vehicle or motor-driven equipment; and
(B) the employee would be personally liable to the claimant according
to Texas law; and . . . .
Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 2005). Liability of a Texas municipality
under the Texas Tort Claims Act is limited to $250,000.00 for each person, $500,000.00 for each
single occurrence for bodily injury and death, and $100,000.00 for each single occurrence for injury
to or destruction of property. Tex. Civ. Prac. & Rem. Code Ann. § 101.023(c) (Vernon 2005). 
Under Texas law, official immunity protects a government employee from liability when the
employee is (1) acting in the scope of his or her employment, (2) performing a discretionary duty,
and (3) acting in good faith. Univ. of Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000); see Victory
v. Faradineh, 993 S.W.2d 778, 780–81 (Tex. App.—Dallas 1999, no pet.); City of Wichita Falls v.
Norman, 963 S.W.2d 211, 216–17 (Tex. App.—Fort Worth 1998, pet. dism'd w.o.j.); see also City
of Houston v. Daniels, 66 S.W.3d 420, 424–25 (Tex. App.—Houston [14th Dist.] 2001, no pet.).
II.       Doctrine of Comity
            Because the various states of our nation are, in many respects, entirely separate legal
sovereignties, no state "can demand that its laws have effect beyond the limits of its sovereignty." 
Gannon v. Payne, 706 S.W.2d 304, 306 (Tex. 1986). However, under the doctrine of comity, Texas
will recognize the laws of other states with the expectation that those states will extend Texas the
same consideration. K.D.F. v. Rex, 878 S.W.2d 589, 593–94 (Tex. 1994). "Comity is a principle
under which the courts of one state give effect to the laws of another state or extend immunity to a
sister sovereign, not as a rule of law, but rather out of deference or respect." N.M. v. Caudle, 108
S.W.3d 319, 321 (Tex. App.—Tyler 2002, pet. denied). 
III.      This Court has Jurisdiction over this Interlocutory Appeal
            In its first issue, Greenwell and the City argue they have standing to seek an interlocutory
appeal from the trial court's denial of their joint motion for partial summary judgment based on
Arkansas sovereign immunity. This issue, though, is really whether this appeal concerns an
appealable order rather than standing.


 The City and Greenwell argue that Section 51.014 authorizes
an interlocutory appeal of the trial court's order.
            Generally, only final judgments of trial courts are appealable. Lehmann v. Har-Con Corp.,
39 S.W.3d 191, 195 (Tex. 2001); Hinde v. Hinde, 701 S.W.2d 637, 639 (Tex. 1985); N. E. Indep. 
Sch. Dist. v. Aldridge, 400 S.W.2d 893, 895 (Tex. 1966); see Tex. Civ. Prac. & Rem. Code Ann.
§ 51.012 (Vernon 1997). The Legislature has, however, authorized the appeal of a number of
interlocutory orders. See, e.g., Tex. Civ. Prac. & Rem. Code Ann. § 51.014 (Vernon Supp. 2005). 
Section 51.014 of the Texas Civil Practice and Remedies Code provides as follows, in pertinent part:
(a) A person may appeal from an interlocutory order of a district court, county
court at law, or county court that:
 
. . . .
 
(5) denies a motion for summary judgment that is based on an
assertion of immunity by an individual who is an officer or employee of the
state or a political subdivision of the state; . . . .

Tex. Civ. Prac. & Rem. Code Ann. § 51.014. The City and Greenwell argue that Section
51.014(a)(5) is not limited to Texas officers or employees.
            If the statutory text is unambiguous, a court must adopt the interpretation supported by the
statute's plain language unless that interpretation would lead to absurd results. Tex. Dep't of
Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d 170, 177 (Tex. 2004). The
term "state" is not defined by Section 51 of the Texas Civil Practice and Remedies Code. However,
the Code Construction Act defines "State" as "any state, district, commonwealth, territory, and
insular possession of the United States and any area subject to the legislative authority of the United
States of America." See Tex. Gov't Code Ann. § 311.005 (Vernon 2005). Further, we do not
believe the word "the" changes the meaning of "state" in Section 51.014. Although "the" is singular,
it does not necessarily limit the phrase "the state" to Texas. Therefore, we conclude the phrase "the
state" includes Arkansas and an interlocutory appeal may be taken from the denial of Greenwell's
motion.
            Davis cites City of Irving v. Pak, 885 S.W.2d 189 (Tex. App.—Dallas 1994, writ dism'd
w.o.j.), for the proposition that, if Section 51.014 applies to Arkansas police officers, the City is
precluded from bringing an interlocutory appeal because its motion was not based on Greenwell's
official immunity. Davis argues that the City's appeal is based on the trial court's refusal to apply
Arkansas sovereign immunity under the doctrine of comity rather than on Greenwell's official
immunity. In Pak, the Dallas Court of Appeals held the employees of the City of Irving could appeal
the denial of their summary judgment motions, but the City of Irving could not appeal because the
City's motion for summary judgment was not based on official immunity due to the acts of its
employees. Id. at 193. Instead, the City of Irving asserted a separate claim of immunity that the
plaintiffs did not meet the statutory requirements to sue the City. Id. (The incident was not based
on the operation of a motor-driven vehicle or a condition or use of tangible or real property.)



            "A claim of governmental immunity may be based on an individual's assertion of official
immunity and therefore fall within the ambit of section 51.014(5)." Id. at 191 (citing City of Houston
v. Kilburn, 849 S.W.2d 810, 812 (Tex. 1993)); see Guevara, 904 S.W.2d at 656 (interlocutory appeal
allowed when the city's argument was based on official immunity). 
            The immunity asserted by the City of Texarkana, Arkansas, in its motion for partial summary
judgment is based on the provisions of Section 21-9-301 of the Arkansas Code. See Ark. Code
Ann. § 21-9-301. Under Section 21-9-301, an Arkansas municipality is immune from liability
predicated on the negligent act of an employee committed in the performance of the employee's
official duty. Id. The City argues that, because the immunity statute relied on by the City only
applies when an employee is protected by official immunity, the City's motion is based on
Greenwell's official immunity.


 The negligent acts were allegedly committed by the City's employee
while in the performance of his scope of employment. Because the immunity granted Arkansas
employees is the functional equivalent of Texas official immunity, we conclude the City's argument
is based on an assertion of official immunity. Therefore, the denial of the City's motion is an
appealable order under Section 51.014(a)(5).
IV.      Standard of Review
            Several Texas courts of appeals have held that a trial court's decision concerning comity
should be reviewed for an abuse of discretion.


 The Texas Supreme Court, though, has stated that
it "will not defer to the trial court on matters involving relations between Texas and other
sovereigns." K.D.F., 878 S.W.2d at 593 (discussing the standard of review for mandamus
concerning whether Kansas sovereign immunity should apply based on comity). We believe de novo
review rests on a firmer foundation than abuse of discretion. In general, we review de novo issues
of law and only defer to the trial court when factual findings are at issue. See id. Further, choice of
law issues are normally reviewed de novo.


 The discretion in applying comity is a discretion of law
rather than the discretion of the trial court. 16 Am. Jur. 2d Conflicts of Laws § 17 (1998). We will
review de novo the trial court's decision.
V.        The Full Faith and Credit Clause Does Not Require Us To Honor Arkansas Sovereign
Immunity
            The City and Greenwell argue in several places in their brief that the Full Faith and Credit
Clause requires application of Arkansas sovereign immunity. The United States Constitution does
place some limits on the application of Texas choice of law rules. The Full Faith and Credit Clause
and the Due Process Clause require the application of the law of a state which has a "significant
contact or significant aggregation of contacts, creating state interests, such that choice of its law is
neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 449 U.S. 302, 310–13
(1981); see Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 818 (1985). "The Full Faith and Credit
Clause does not compel 'a state to substitute the statutes of other states for its own statutes dealing
with a subject matter concerning which it is competent to legislate.'" Sun Oil Co. v. Wortman, 486
U.S. 717, 722 (1988). We note that the constitutional test is less stringent than the Second
Restatement's "most significant contacts" test.


 Since both Arkansas and Texas have significant
contacts with the transaction in question, the Full Faith and Credit Clause does not mandate the
application of either Texas law or Arkansas law. 
 
 
            Further, the Full Faith and Credit Clause "does not require a state to apply foreign statutes
that conditionally waive sovereign immunity, particularly when the foreign statute would produce
a result 'in violation of [the forum state's] own legitimate public policy.'" K.D.F., 878 S.W.2d at
593; see Franchise Tax Bd. v. Hyatt, 538 U.S. 488, 499 (2003) (declining to engage in balancing of
the States' competing sovereign interests when the forum court "sensitively applied the principles
of comity with a healthy regard for [the other state's] sovereign status" and concluded that the other
state's sovereign immunity statute would violate the forum state's public policy); Hall, 440 U.S. at
421. While there are specific limitations on the sovereignty of the States, one State's immunity from
suit in the courts of another State is nothing more than a matter of comity. Hall, 440 U.S. at 425. 
While the United States Supreme Court noted that interstate comity is a principle worth promoting,
it recognized that requiring the forum state to honor another state's sovereign immunity when it
violates the forum state's public policy would "constitute the real intrusion on the sovereignty of the
States." Id. at 426–27. Therefore, if Arkansas sovereign immunity violates the public policy of
Texas, the Full Faith and Credit Clause does not require Texas courts to apply the Arkansas statute.
VI.      The Arkansas Statute Does Not Violate Texas Public Policy
            The Texas Supreme Court has held that Texas will extend comity to another state unless that
state has declined to extend comity to Texas or other states under the same or similar circumstances
or the extension of comity would violate Texas public policy. K.D.F., 878 S.W.2d at 594–95; State
of New Mexico v. Caudle, 108 S.W.3d 319, 321 (Tex. App.—Tyler 2002, pet. denied). 
            This case highlights the unique characteristics of the City of Texarkana as a community
straddling the state line between Texas and Arkansas. Although one community, Texarkana consists
of two separate cities located not only in separate counties, but in separate states. Each city has its
own police department that enforces the separate laws of the State of Texas or Arkansas,
respectively, as well as separate city ordinances. 
            Although separate, the two police departments often need to cooperate in joint efforts. 
Indeed, the two police departments are even housed in the same building, the Bi-State Justice
Building. The eastern portion of the Bi-State Justice Building is located within Arkansas, but the
western portion of the Bi-State Justice Building is located within Texas. Both Texas and Arkansas
have passed legislation relinquishing exclusive jurisdiction over the portion of the facility located
within the respective geographical boundary of each state. Arkansas and Texas both recognize
concurrent jurisdiction over the geographical areas of both states located within the Bi-State Justice
Building. See Ark. Code Ann. § 12-49-301 (2005); Tex. Loc. Gov't Code Ann. §§ 361.021–.029
(Vernon 1999). Often the police departments must aid each other in order to achieve their common
goal of law and order. The unique characteristics of Texarkana often require the two departments
to coordinate their activities to investigate crimes which are committed in part in Texas and in part
in Arkansas.


 Since each state is limited in making arrests within the limits of its own territorial
jurisdiction, it is imperative that the police departments cooperate with each other, otherwise a
person charged with a crime could avoid prosecution by merely entering the other state.


 The need
for cooperation between Texas and Arkansas in policing the streets of Texarkana heightens the
desirability that the public policy of each state fosters such cooperation. When an emergency occurs
which requires the coordinated efforts of police in both states, each must be prepared to act without
debating which state's law governs the liability for its actions. It is in the general interest of the
citizens of Texas to foster this cooperation of law enforcement officials. Doing otherwise might
have a chilling effect and hamper the joint efforts of the police departments. 
            Since comity is grounded in cooperation and mutuality, we should extend comity if the state
in question is a cooperative state and has itself extended comity and recognized the sovereignty of
Texas and other states. K.D.F, 878 S.W.2d at 594. In the absence of evidence to the contrary, we
will treat Arkansas as a cooperative jurisdiction.


 "There is a presumption that the sovereign states
in the United States intend to adopt a policy of broad comity toward one another." Caudle, 108
S.W.3d at 321. Therefore, we will extend comity to the law of a cooperative jurisdiction so long as
that law does not violate Texas public policy. K.D.F., 878 S.W.2d at 595; Robertson v. Estate of
McKnight, 609 S.W.2d 534, 537 (Tex. 1980). The dispute in this case concerns whether the trial
court erred in finding that the Arkansas sovereign immunity statute violates Texas public policy. 
Both Texas and Arkansas have limited waivers of sovereign immunity, but the two states differ in
the extent of that waiver.
            Texas courts have recognized the sovereign immunity statutes of other states when their
limited waiver of sovereign immunity was greater than or identical to Texas. K.D.F., 878 S.W.2d
at 595–97 (Kansas sovereign immunity); Cason, 1997 Tex. App. LEXIS 811 (Louisiana sovereign
immunity does not violate Texas public policy); Hawsey, 934 S.W.2d at 727 (Louisiana sovereign
immunity). But see Amarillo Hosp. Dist., 835 S.W.2d at 130 (refusing to grant Oklahoma hospital
immunity from suit). Texas "will only refuse to enforce a foreign law which violates good morals,
natural justice, or is prejudicial to the general interests of our own citizens." Robertson, 609 S.W.2d
at 537; see Gutierrez, 583 S.W.2d 312. 
            While the issue presented here is uncommon, a very similar case has been decided by the
federal courts. Lee, 800 F.2d 1372. In Lee, the Fifth Circuit held that the Texas trial court abused
its discretion in refusing to extend comity. Id. at 1377. The facts in Lee showed that Miller County,
Arkansas, owned a helicopter used for law enforcement and civil defense purposes. On numerous
occasions, Miller County provided the helicopter, at a nominal fee, to Bowie County, Texas, for civil
defense purposes. The Miller County pilot flew the helicopter to an air show in Mount Pleasant,
Texas, and allowed two Texarkana, Texas, police officers, who were also serving in civil defense
capacities in Texas, to ride in the helicopter. It crashed, and the officers sued Miller County,
Arkansas, which invoked the sovereign immunity doctrine based on comity and other theories. Id.
at 1373–74. In Lee, the invocation of Arkansas' sovereign immunity doctrine would have resulted
in complete immunity of Miller County, Arkansas, for liability for the tort claims, id. at 1374,
whereas if Texas law applied, each person could recover a maximum of $100,000.00. Id. at 1376. 
The Fifth Circuit Court reasoned that Miller County would have been at least partially immune from
liability if it had been a Texas county.


 The Court held that, even if the county would not have been
completely immune under Texas law, "it could hardly be said that extending immunity would be so
at odds with Texas public policy as to be violative of 'good morals, [or] natural justice.'" Id. at 1377. 
The Lee opinion explained that both Texas and Arkansas continued to recognize some form of
sovereign immunity and the fact that there was a different level of immunity was not so at odds with
Texas public policy as to be violative of "good morals, [or] natural justice." Id. Further the court
in Lee explained the need to extend comity to foster continued cooperation of the counties in
different states on civil defense matters. Id. at 1378. We find Lee to be persuasive. Because both
Texas and Arkansas have limited waivers of sovereign immunity, recognition of Arkansas sovereign
immunity will not violate good morals or natural justice. Even though the amounts of the waivers
differ, applying Arkansas' limited waiver of sovereign immunity would not be contrary to Texas
public policy.


 The mere fact that the law of the other state differs from Texas does not render it
so contrary to Texas public policy that Texas courts will refuse to enforce it. Gutierrez, 583 S.W.2d
at 321; see Robertson, 609 S.W.2d at 537; see also Delhomme Indus., Inc. v. Houston Beechcraft,
Inc., 669 F.2d 1049, 1058 (5th Cir. 1982). 
            One factor that we have considered in determining whether the application of the Arkansas
limited waiver of immunity law violates Texas public policy is Texas' requirements for liability
insurance coverage. The Legislature has set $20,000.00 as the minimum limit of liability insurance
coverage that is required in Texas. See Tex. Transp. Code Ann. § 601.072 (Vernon 1999). We
recognize this statute does not immunize drivers in Texas from amounts in excess of $20,000.00,
but as a practical matter many times the limit of insurance is the limit of recovery. The fact that the
public policy in the State of Texas only requires liability insurance in the minimum amount of
$20,000.00 buttresses our conclusion that the application of the Arkansas sovereign immunity law
is not repugnant to Texas public policy.
            In Hall, the United States Supreme Court noted that "[i]t may be wise policy, as a matter of
harmonious interstate relations, for States to accord each other immunity or to respect any
established limits on liability." 440 U.S. at 426. As previously stated, the comity doctrine is not one
of right, but is extended out of deference and respect to maintain harmony and foster cooperation. 
It cannot be said that the Arkansas statutes violate good morals or natural justice. To fail to extend
the Arkansas law on the basis of comity in this instance would not promote cooperation between the
police forces and might hamper the forces in their mutual goals. Such a result would be detrimental
to the general welfare of the citizens of Texas. Based on principles previously discussed, we
conclude the Arkansas statute is not repugnant to the public policy of Texas and should be enforced.
            We reverse the judgment of the trial court and remand for further proceedings consistent with
this opinion.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          October 19, 2005
Date Decided:             November 22, 2005